**ILLINOIS INSURANCE GUARANTY FUND, Objector**

v.

**RELIANCE INSURANCE COMPANY IN LIQUIDATION, Respondent.**

**Delaware Insurance Guaranty Association, Objector**

v.

**Reliance Insurance Company in Liquidation, Respondent.**

**Pennsylvania Property and Casualty Insurance Association, Objector**

v.

**Reliance Insurance Company in Liquidation, Respondent.**

**(Ancillary Matters to In re: Reliance Insurance Company in Liquidation, No. 1 REL 2001).**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2014.

Decided March 21, 2014.

Steven B. Davis and Karl S. Myers, Philadelphia, for plaintiff Michael F. Consedine, Insurance Commissioner of Pennsylvania.

Steven T. Witmer, Chicago, IL, for objectors.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge and COVEY, Judge.

OPINION BY Judge LEADBETTER.

The Guaranty Associations (GAs) from Illinois, Delaware and Pennsylvania each object to the Liquidator's notices of determination (NODs) assigning a priority level (e) and a valuation of $0 to each of the GA's claims for expenses related to investment of guaranty fund assets.[1] A referee assigned to hear the consolidated cases recommended affirmance of the Liquidator's determinations. After the GAs each took exception to the recommendation, the court directed argument to consider whether the investment-related expenses should be assigned priority level (a) as costs and expenses of administration under Section 544 of The Insurance Department Act of 1921(Act),[2] 40 P.S. § 221.44.

The three GAs are entities created and regulated by their state's statute; nevertheless, they share the same purpose and general operational framework.[3] As entities created to provide some payment under certain insurance policies after the issuing insurance company is declared insolvent, the GAs protect the most vulnerable policyholders and claimants from incurring total loss or excessive delay in payment. The GAs obtain funds for this purpose through assessments imposed on insurance companies authorized to write policies in each GA's respective state, as well as subrogation reimbursement from the estates of insolvent insurers and investment income. If the assessments together with other assets of the GA are inadequate in any given year to meet obligations, the funds available are prorated among the obligations and the unpaid portions of the obligations are paid as soon thereafter as funds become available. See, e.g., Section 1808(e) of the Insurance Company Law of 1921(Law),[4] 40

1. This operates, in effect as an outright denial of these claims.

2. The Act of May 17, 1921, P.L. 789, Article V, added by the Act of December 14, 1977, P.L. 280.

3. In describing the purpose and operational framework of the GAs, citations are only to Pennsylvania's statute. Any difference in the specific language in the various states' statutes is immaterial to a general understanding of the function of the GAs and to our resolution of the issue before us.

4. Act of May 17, 1921, P.L. 682, Article XVIII (regarding the Pennsylvania Property and Casualty Insurance Guaranty Association), added by the Act of December 12, 1994, P.L. 1005, 40 P.S. §§ 991.1801—991.1820.

P.S. § 991.1808(e). The financial stability and operation of the GAs are overseen by the commissioner of the respective state insurance department. *See* Section 1805, 40 P.S. § 991.1805. In the event the assets of the GAs at the end of a calendar year exceed estimated liabilities for the coming year, the GAs may, but are not required to, issue a refund to member insurers in proportion to the contribution of each. *See* Section 1809, 40 P.S. § 991.1809. Premiums on policies issued by member insurers reflect assessments paid less any amounts returned to the insurer. *See* Section 1810, 40 P.S. § 991.1810.

When an insolvent insurance company receives claims under a policy it had issued, a list of such claims is submitted to the GAs by the liquidator. After a GA pays on covered claims,[5] it submits to the liquidator a report of the covered claims that have been paid and the GA then has the right to recover from the insolvent insurer's estate. *See* Section 1816(a), 40 P.S. § 991.1816(a). A person who has been paid by a GA is deemed to have assigned his rights under the policy to the GA. *Id.* In turn, the GA is reimbursed from the estate of the insolvent insurer at priority level (b) pursuant to the priority order of distribution established in Section 544 of the Act for policyholder claims. 40 P.S. § 221.44. Of particular relevance to GA claims against the insurer are the following priority levels:

> (a) The costs and expenses of administration, including but not limited to the following: the actual and necessary costs of preserving or recovering the assets of the insurer; compensation for all services rendered in the liquidation;

any necessary filing fees; the fees and mileage payable to witnesses; reasonable attorney's fees; *the expenses of a guaranty association in handling claims.*

> (b) All claims under policies for losses wherever incurred, including third party claims. . . .
>
> . . . .
>
> (e) Claims under nonassessable policies for unearned premium or other premium refunds and claims of general creditors. . . .

Section 544 of the Act (emphasis added). Priority level (a) claims are paid first and claims in each priority level are paid in full before members of the next level are paid; hence, it is very unlikely that claims at priority level (e) will be paid from the Reliance estate.

It is undisputed that, prior to 2005, the Insurance Commissioner in the course of liquidating insurance companies, routinely reimbursed GAs for investment expenses and many other expenses deemed to be costs of administering the GA funds. In that year, Reliance (in liquidation) issued guidelines for GA reimbursement that, among other things, specifically excluded GA payments for investment management services. Liquidator's brief, Exh. E. Subsequently, in 2007, the Pennsylvania Insurance Department announced a policy that similar guidelines, particularly including the non-reimbursement at priority level (a) for investment services, would apply to all of the insolvencies being administered by the Department. Liquidator's brief, Exh. A. However, it is also undisputed that the Liquidator continues to reimburse the GAs

---

**5.** A "covered claim" is defined in Section 1802 of the Law, 40 P.S. § 991.1802, as an unpaid claim by a state resident or arising from in-state property, including one for unearned premium, that arises out of a type of policy to which GA coverage applies. Excluded from coverage under the statute are claims by reinsurers, insurers, insurance pools, or claims by high net worth individuals.

on a pro rata basis for bank custodial fees, rent, utility bills, employee salaries and computer expenses as administrative expenses at priority level (a). Further, the Liquidator takes reimbursement from the estate at priority level (a) for the costs of investment management services related to estate assets that have been marshaled and still await distribution.

The GAs contend that for priority purposes their investment management costs should not be treated differently than other reimbursed expenses such as bank fees and overhead costs in the form of rent, utilities, salaries and equipment. They further contend that insofar as, like the Liquidator, they step into the shoes of the insolvent company for the purpose of at least partially covering certain claims, they should be reimbursed for investment services just as is the Liquidator. The GAs argue that their sole purpose is to pay covered claims, therefore, every administrative and operational activity is essentially related to handling claims, and thus these costs must be assigned to a priority level (a).

In response, the Liquidator maintains that the GAs are rewriting Section 544 of the Act. He contends that the phrase "costs and expenses of administration" was not meant to be applied "to the Liquidator and the [GAs] on an equal basis," but only to the Liquidator's estate administration expenses. Liq. Brief at 28.[6] Where there is no guaranty fund coverage on a policy issued by the insolvent estate, the Liquidator must do the claims handling. Where a Reliance product is covered by a guaranty association, it bears the expense of claims handling rather than the estate. However, the GAs' expense in obtaining

investment advice does not relate to claims handling and does not benefit the estate, but instead to the extent that such advice produces investment income, this income benefits the member insurers that may see a reduction in their assessments.

Confronted with these same arguments, the referee turned first to the statutory language in Article V directing priority (a) for the "costs and expenses of administration" among which "the expenses of a guaranty association in handling claims" is specifically listed. He rejected the contention that the inclusion of GA claims handling expenses in the list of costs and expenses of administration essentially made the GAs a co-administrator of the insolvency. The referee concluded, pointing to Section 520 of the Act, 40 P.S. § 221.20 (liquidation orders) and Section 523, 40 P.S. § 221.23 (power of the liquidator) that "the entire statute demonstrates a legislative intent to vest the Insurance Commissioner with sole and exclusive control of the liquidation process." Referee's Report and Recommendation at 13.

Turning more specifically to whether the investment expenses can be considered expenses in handling claims, the referee noted that the obligation of the GAs to pay covered claims would be the same regardless of any investment income that may accrue. He opined:

> the GAs incur investment expenses, and they handle Reliance claims; but each would occur even if the other did not, and their simultaneity does not mean that they are related to each other. I would view this differently if one could say that, but for the existence of Reliance claims, there would be no GA in-

6. In support, the Liquidator explains that the statutory phrase "cost, and expenses of administration" was developed by the State of Wisconsin at a time when guaranty associations did not exist. The reference to guaranty funds was added when Pennsylvania adopted a nearly identical version of the Wisconsin statute. Liq. Brief at 29–31.

vestment expense; or if the Liquidator or this Court mandated investments be made; or if Reliance's policyholders or other creditors had some enforceable property interest in the income generated. None of these conditions obtain. Referee's Report and Recommendation at 16. The referee further considered whether any GA investment income benefits the Reliance estate (and its primary beneficiaries, the policyholders) and concluded that "the only benefit to the estate ... is the possibility that the processing and payment of covered claims could be delayed without investment income." *Id.* This he deemed an unquantifiable and speculative benefit. He perceived predominantly a benefit to the GA member insurer who may incur a decrease in assessment if the investments perform well and stated that those companies should pay for the investment advice.

We agree with the referee's analysis and conclusions as set forth herein. Any benefit of the GA's investment income accrues not to the insolvent insurer's estate and the claimants thereto, but rather to each GA's member insurers who may enjoy a lower assessment when investment yields an increase in the funds available to pay claims. Such a result is inconsistent with the primary policy objective of the Act to protect innocent policyholders whose insurance carriers have become insolvent.

Even more to the point, the statute is quite clear. Priority (a) is accorded to the administrative expenses of the Liquidator generally, but only to the guaranty associations' expenses *in handling claims.* We cannot, as the GAs urge, ignore this limiting language, which is not only plain on its face, but comports with the fundamental purpose of the Act. Accordingly, reimbursement of GA expenses at priority level (a) is allowed only where the costs to be reimbursed are those reasonable and nec-

essary to facilitate the GA's duty to handle claims. The investment expenses at issue here fail to meet this standard. The investment advice has no bearing on the claims handling responsibilities of the GAs. The GAs must handle claims and pay those that qualify regardless of whether or not their funds are favorably invested.

We approve the Referee's Report and Recommendation. The GAs' Objections to their respective NODs are overruled and the NODs are sustained.

### ORDER

AND NOW, this 21st day of March, 2014, upon consideration of the Objectors' Exceptions to the Report and Recommendation of the Referee, it is hereby ORDERED that the Referee's Report and Recommendation is APPROVED, Claimants' Objections are Overruled and the Liquidator's Notices of Determination on each of the Objectors' claims is hereby sustained.